IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY LOUIS HERMANN and
KAREN ELAINE HERMANN,

                  Plaintiffs,

  v.

STATE OF WISCONSIN, DUNN COUNTY,
MEGAN MITTLESTAD, NICHOLAS P. LANGE,
DENNIS P. SMITH,
DUNN COUNTY SHERIFF'S OFFICE, and
PLANNING, RESOURCES, AND DEVELOPMENT
COMMITTEE,

                  Defendants.

OPINION & ORDER

17-cv-60-jdp

---

Pro se plaintiffs Timothy Louis Hermann and Karen Elaine Hermann, who reside in Otter Creek, Wisconsin, bring this lawsuit alleging that State of Wisconsin and various Dunn County officials conspired unlawfully to foreclose on their home and reject their offer to buy the real estate back.

On initial review of the Hermanns' complaint, I permitted them to serve their summonses on the various defendants, minus the "John Doe" defendants that I dismissed. Dkt. 7. The Hermanns filed proof of service for the remaining defendants on February 3, 2017. Two groups of defendants subsequently filed motions to dismiss, one on behalf of the state, and one on behalf of the Dunn County defendants. The Hermanns have also filed a motion for injunctive relief, a motion to strike the Dunn County defendants' brief opposing that motion, and two motions for entry of default.

After considering these motions and the responsive filings, I will dismiss the State of Wisconsin and will grant the Dunn County defendants' motion to dismiss in part. Most of the

claims against the Dunn County defendants will be dismissed, and the following Dunn County defendants will be dismissed from the case: Dunn County Sheriff's Office, Dunn County's Planning, Resources, and Development Committee, Megan Mittlestad, and Nicholas Lange. I will deny the Hermanns' motion for injunctive relief and motion to strike. I will direct the Hermanns to file an amended complaint further explaining their claims against defendants Dunn County and Smith.

BACKGROUND

I stated previously that "plaintiffs' complaint is relatively vague regarding the actions they believe violated their rights, and the electronically available court records are not detailed enough for me to conclusively rule . . . at this point in the proceedings." Dkt 7, at 5. The parties' subsequent filings, including copies of various state court documents, have provided me with helpful clarification of the Hermanns' claims and the state court proceedings initiated against them.

The Hermanns state that they owned a parcel of land and home in Otter Creek, Wisconsin, but that Dunn County initiated foreclosure proceedings against them because they failed to stay current on their taxes. Judgment was entered against them in September 2013 in Dunn County case number 13-cv-20. Dkt. 14-3. The circuit court proceedings show this to be an in rem tax foreclosure lawsuit under Wis. Stat. § 75.521.

The Hermanns believe this judgment was unjustly entered and filed numerous documents with the register of deeds and circuit court stating that the judgment was void for fraud. Dkt. 1, at 6-7. They remained on the property during this period. At some point after this judgment, they began seeking what they have called "alternatives to protect their

2

property." One method they chose was to file a land patent, declaring their title to be absolute, with the register of deeds on February 5, 2015. Dkt. 1-1, at 8.

In 2016, Dunn County initiated a new proceeding, case number 16-cv-210, against the Hermanns to remove them from the property. A judgment to vacate was entered on December 12, 2016. Dkt. 14-9. The judgment gave the Hermanns until December 26 to leave the property and authorized Dunn County "to remove the [Hermanns] and all of their personal property with the assistance of the Sheriff if they have not vacated the property."

The sheriff, defendant Smith, left a "notice to vacate" at the Hermanns' door on December 16. The Hermanns then met with defendant Lange and stated that they were willing to pay off their delinquent taxes. They also contacted the Dunn County treasurer's office, run by defendant Mittlestad, and made the same offer. Neither Lange nor the treasurer's office would accept the payment. But Lange said that they could possibly repurchase the land and that he would direct their request to the county Planning, Resources, and Development Committee, the board responsible for making these decisions. The committee would not meet until January 10, 2017, so Lange said that they would still need to vacate the property, which they did. The committee ultimately did not agree to the Hermanns' offer to repurchase the land. The Hermanns returned to the property sometime following the committee's decision.

On February 6, Smith came to the property to remove anyone he found there. The Hermanns and their three children were on the property when Smith arrived. Timothy Hermann was arrested for trespassing. According to Wisconsin's online court records, both he and Karen were charged with trespassing and later entered into deferred prosecution agreements after pleading no contest. *See* Dunn County case nos. 17-cm-89 and 17-cm-90. The

property." One method they chose was to file a land patent, declaring their title to be absolute, with the register of deeds on February 5, 2015. Dkt. 1-1, at 8.

In 2016, Dunn County initiated a new proceeding, case number 16-cv-210, against the Hermanns to remove them from the property. A judgment to vacate was entered on December 12, 2016. Dkt. 14-9. The judgment gave the Hermanns until December 26 to leave the property and authorized Dunn County "to remove the [Hermanns] and all of their personal property with the assistance of the Sheriff if they have not vacated the property."

The sheriff, defendant Smith, left a "notice to vacate" at the Hermanns' door on December 16. The Hermanns then met with defendant Lange and stated that they were willing to pay off their delinquent taxes. They also contacted the Dunn County treasurer's office, run by defendant Mittlestad, and made the same offer. Neither Lange nor the treasurer's office would accept the payment. But Lange said that they could possibly repurchase the land and that he would direct their request to the county Planning, Resources, and Development Committee, the board responsible for making these decisions. The committee would not meet until January 10, 2017, so Lange said that they would still need to vacate the property, which they did. The committee ultimately did not agree to the Hermanns' offer to repurchase the land. The Hermanns returned to the property sometime following the committee's decision.

On February 6, Smith came to the property to remove anyone he found there. The Hermanns and their three children were on the property when Smith arrived. Timothy Hermann was arrested for trespassing. According to Wisconsin's online court records, both he and Karen were charged with trespassing and later entered into deferred prosecution agreements after pleading no contest. *See* Dunn County case nos. 17-cm-89 and 17-cm-90. The

Hermanns say that Smith unlawfully arrested Timothy and used excessive force during the arrest.

ANALYSIS[1]

A. **Incorrect parties**

I will begin by dismissing defendants Dunn County Sheriff's Office and the Dunn County Planning, Resources, and Development Committee as defendants. These entities are not subject to suit because they are not separable from the county government they serve. *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). With Dunn County already named as a defendant, there is no reason for these extraneous defendants to remain.

B. **Service of process**

The remaining defendants argue that they were not properly served. I will first address defendant State of Wisconsin. The Hermanns' proof of service shows that they served "Cristin Clerk" at the front window of the Dunn County government building located at 800 Wilson Avenue in Menomonie.[2] Federal Rule of Civil Procedure 4(j)(2) permits service of a state or local government by delivering a copy of the summons and complaint to either its chief executive officer or in the manner prescribed by that state's law for service. In Wisconsin, the chief executive officer is the governor. Wis. Stat. § 801.11(3) permits service by delivering a

---

[1] As I stated in my previous order, the Hermanns' complaint "is larded with descriptions of frivolous 'sovereign citizen'-type theories of government illegitimacy." Dkt. 7, at 4. Those theories are frivolous, and for the most part, I will ignore them in analyzing the pending motions below.

[2] Judging from the names of the various persons the Hermanns say they served in this case, I take them to mean that they served a clerk whose first name is Cristin.

copy of the summons and the complaint to the state attorney general or the state attorney general's office. None of these options was satisfied by handing the documents to a clerk at the Dunn County government building.

The Hermanns argue that service of the state was proper under Rule 4(j)(2)(A) because "The Dunn County, Wisconsin Clerk is a chief executive officer for the State in that county" and because "there is a fundamental principal [sic] of law that is 'Notice to the Agent is Notice to the Principal, Notice to the Principal is Notice to the Agent'" and the local agent for the state was served. Dkt. 35, ¶¶ 7, 8. The Hermanns are mistaken. The federal rules and state statutes discussed above are what govern service of process, and mere notice of a lawsuit does not accomplish service in Wisconsin. *See Heaston v. Austin*, 47 Wis. 2d 67, 71, 176 N.W.2d 309 (1970). Therefore, I conclude that the state has not been properly served.

I turn to the Dunn County defendants, starting with the county itself. The Hermanns say that they accomplished service on the county under Rule 4(j)(2) by serving Cristin Clerk "at [the] window" of the Dunn County government building. Dkt. 8-1, at 2. Service under Rule 4(j)(2)(A) was plainly not accomplished because a clerk at a window of a government office is not the chief executive officer of the county. Alternatively, Wis. Stat. § 801.11(4)(a)1. allows for service against a county to be made by delivering the summons to the chairperson of the county board or to the county clerk. It is again clear that the Hermanns did not directly serve either of these officials. But Wis. Stat. § 801.11(4)(b) also permits service of the appropriate governmental official by leaving a copy of the summons "in the office of such officer, director, or managing agent with the person who is apparently in charge of the office." So, the question is whether the individual that the Hermanns did serve was the person

5

"apparently in charge" of either the county clerk's office or the chairperson of the county board's office.

The Wisconsin Supreme Court has held that the "apparently in charge" language of the statute is functionally similar to the same language in Wis. Stat. § 801.11(5)(a) regarding corporate defendants. *Hagen v. City of Milwaukee Employee's Ret. Sys. Annuity & Pension Bd.*, 2003 WI 56, ¶ 17, 262 Wis. 2d 113, 663 N.W.2d 268. The *Hagen* court reviewed corporate service cases and stated that "these cases stand for the proposition that personal jurisdiction . . . may be acquired if the facts demonstrate that in effectuating substitute service on 'the person who is apparently in charge of the office' of an officer, director, or managing agent of the defendant, the process server reasonably but mistakenly serves a person who appears to be, but in fact is not, 'in charge' of that office." *Id*. ¶ 21 (citing *Keske v. Square D Co.*, 58 Wis. 2d 307, 309, 206 N.W.2d 189 (1973); *Horrigan v. State Farm Ins. Co.*, 106 Wis. 2d 675, 683-84, 317 N.W.2d 474 (1982)). The "circumstances surrounding the service of process, as they appeared to the process server" must be considered, but "there must be more than the unsupported assumption of the process server" that the person served was in charge of the appropriate office. *Horrigan*, 106 Wis. 2d at 683-84.

Here, I conclude that the Hermanns' process server could not reasonably believe that the person he served was in charge of either the Dunn County clerk's office or the chairperson's office. In both *Keske* and *Horrigan*, the process server attempted to find the person in charge of the office, who could accept service, by first speaking with the receptionist at the front desk. There is no similar diligence here. The server attempted to serve both the state and county defendants together at this location by handing it to the first person he saw. This shows that

the server thought he could serve all of the defendants under incorrect agency theories. It does not show any effort to serve the correct official under the state statutes.

The remaining three defendants—Mittlestad, Lange, and Smith—are all natural persons who were not personally served pursuant to the requirements of Federal Rule of Civil Procedure 4(e) or Wis. Stat. § 801.11(1). The Hermanns argue that each of these three defendants was properly served under Rule 4(e)(2)(C), which allows service of an individual by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Here, the Hermanns again served "Cristin Clerk" for defendants Mittlestad and Lange. The Hermanns served "Maria Clerk," the person at the front window of the Dunn County Sheriff's Office, in lieu of defendant Smith. But there is no indication on the proof of service or any of the parties' filings in this case showing that either of these persons are authorized by appointment or law to receive service of process on behalf of Mittlestad, Lange, or Smith.

To be authorized to receive service of process in Wisconsin, a defendant would have had to designate the clerks "to perform the function, job, or duty of accepting service." *Mared Industries, Inc. v. Mansfield*, 2005 WI 5, ¶ 33, 277 Wis. 2d 350, 690 N.W.2d 835. Unlike service for a corporate defendant, there is no "reasonably but mistaken" analysis for personal service under Wis. Stat. § 801.11(1)(d). *Id*. ¶ 2 ("We hold that 'authorized by appointment' requires the principal to provide an agent with actual express authority to accept service of summons for the principal."). There is no reason to think that either person served held this designation.

In sum, none of the defendants have been properly served. This has not stopped the Hermanns from filing two motions for entry of default against them. I will deny both motions

7

because of the service failure, and even without that failure, both sets of defendants have filed motions to dismiss, showing that they are attempting to defend themselves in this case.

Because none of the defendants have been properly served, Rule 4(m) permits me to either dismiss this action entirely, without prejudice, or to order that service be made within an appropriate time. Normally I would extend the time for a pro se litigant who mistakenly failed to properly serve a defendant. But that would be pointless here because there are other reasons to dismiss many of the Hermanns' claims, and I address defendants' substantive arguments for dismissal below.

**C. Claims that the state judgments are "null and void"**

A major focus of the Hermanns' complaint is their belief that their home was improperly foreclosed on. The Hermanns maintain that the judgments rendered against them in 2013 and 2016 were the byproduct of fraud and therefore invalid. As I explined in my previous ruling:

> One of the major thrusts of the complaint seems to be the Hermanns' belief that the foreclosure and eviction orders issued by the Dunn County court are void. To the extent that any of their constitutional, Fair Debt Collection Practices Act, conspiracy, or fraud claims depend on the validity of the state court judgments, those claims likely will end up being dismissed under the *Rooker-Feldman* doctrine, which "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims that are 'inextricably intertwined' with state court determinations." The doctrine "is based upon recognition of the fact that inferior federal courts generally do not have the power to exercise appellate review over state court decisions." If the Hermanns believe that the state court did not act properly, their recourse is in the state appellate system, not in the federal district court.

Dkt. 7, at 4 (citations omitted). After reviewing the two motions to dismiss and the Hermanns' responses, I conclude that many of the Hermanns' claims must be dismissed for several reasons, including the *Rooker-Feldman* doctrine.

8

The Hermanns' complaint does not include explicit allegations against the State of Wisconsin. But in response to the state's motion to dismiss, they state that "the County/agents were more at fault . . . [h]owever, the principal [Wisconsin] has a responsibility to make sure the agents are acting in good faith and lawful accountability." Dkt. 35, ¶ 16. I take the Hermanns to be maintaining one or more of the following theories: (1) the various Dunn County defendants are agents for the state, thus making the state liable for its agents' unconstitutional actions; (2) the state is liable for any erroneous decisions or procedural errors made in its courts; or (3) the state, as principal for Dunn County, unjustly permitted the collection of property taxes, which ultimately led to foreclosure of the Hermanns' home. Such claims are doomed for multiple reasons.

The State of Wisconsin is generally immune from suit, at least if it is directly named as a defendant. Even if it were not immune, the state cannot be sued under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). In addition to these problems, the Hermanns are mistaken that employees of a county are agents of the state. If they instead meant to sue specific state employees working in the court system, they failed to name those officials as defendants. Any claims against court officials may be subject to judicial immunity. And if they are suing the state because they do not agree with the judgments against them, those claims are barred by *Rooker-Feldman*.[3] This court simply cannot undo the state court judgments at issue here.

---

[3] This includes the Hermanns' claim that the judgments are void because they hold a United States land patent over the property. Even if *Rooker-Feldman* did not apply, I would dismiss this claim because this is a long-discredited theory of defense against legal action by the government or other parties with an interest in property. *See, e.g., Wisconsin v. Glick*, 782 F.2d 670, 672 (7th Cir. 1986) ("[F]ederal patents do not prevent the creation of later interests and have nothing to do with claims subsequently arising under state law.").

For similar reasons, I will also deny the Hermanns' motion for injunctive relief. Dkt. 17. The purpose of the Hermanns' motion is their desire to move back into their previous home. As I discussed previously, if the Hermanns are "seeking a temporary restraining order against government officials involved in their eviction or the sale of the real estate at issue here . . . it is extremely unlikely that I would issue an order conflicting with orders already issued by the state courts." Dkt. 7, at 6. Upon review of the Hermanns' motion and the parties' other filings, I conclude that the *Rooker-Feldman* doctrine precludes me from entertaining their request to essentially undo the state court judgments.

I will also dismiss any claims that the Hermanns may be attempting to bring about the validity of the underlying taxes. In their complaint, the Hermanns allege that "because of unfair, excessive taxes the plaintiffs then started seeking alternatives . . . so that these corporations do not steal their farm land." Dkt. 1, at 6. Also in their complaint and in subsequent filings the Hermanns refer to the "volunteer program" regarding the payment of their property taxes, which the Hermanns feel "may not be fair/equitable." In their response brief, the Hermanns elaborate that "[t]he plaintiffs have a Constitutionally secured right to due process of law under the . . . 13th Amendment (involuntary tax and unjust enrichment— they [plaintiffs] were going to volunteer taxes.)" Dkt. 22, at 2. So I take the Hermanns to be saying that the tax judgments against their property were unfair because the underlying taxes themselves violated due process.

The due process clause imposes procedural limitations on a state's power to deprive its citizens of property. *See Jones v. Flowers*, 547 U.S. 220, 226-39 (2006). However, the United States Supreme Court has held that 42 U.S.C. § 1983 cannot be used as a vehicle to challenge state taxes when an adequate remedy exists under state law. *Nat'l Private Truck Council v. Okla.*

*Tax Comm'n*, 515 U.S. 582 (1995). Here, the Hermanns had the remedy of the state court proceedings themselves, and even if there were no previous proceedings, they would be required to challenge the taxes under the procedures set forth in the Wisconsin statutes rather than file a federal lawsuit about them. *See* Wis. Stat. § 71.88 (taxpayer must appeal to the Department of Revenue and then to the Tax Appeals Commission). Therefore, any due process claims that the Hermanns are pursuing regarding what they allege are "unfair, excessive taxes" must also be dismissed. I conclude that the Hermanns have no actionable claims against the State of Wisconsin, and I will grant the state's motion to dismiss.

**D. FDCPA claims**

The Hermanns have alleged violations of 15 U.S.C. § 1692, The Fair Debt Collection Practices Act, by each defendant. The Hermanns have since abandoned these claims, stating "for the sake of simplicity the plaintiffs will forgo the FDCPA argument in the complaint." Dkt. 22, at 3. The Hermanns are the master of their complaint, and their decision to abandon any FDCPA claims would be enough reason to dismiss those claims.

But even if they decided to later attempt to reinstate those claims, I would have to dismiss them. The act applies only to consumer debts. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) ("[T]he Act defines 'debt collector' to whom it applies as including those who 'regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another.'"). Taxes are therefore not considered "debts" under 15 U.S.C. § 1692 and do not qualify for the FDCPA's protection "because they generally are used for communal rather than personal, family, or household purposes." *Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477, 481 (7th Cir. 1997) (citing *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)).

**E. Other § 1983 claims**

I will address the Hermanns' § 1983 claims as they relate to each remaining defendant. Defendant Mittlestad, treasurer for Dunn County, seeks dismissal based on § 1983's requirement of personal involvement. In support of their motion, the Dunn County defendants cite authority stating, "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). But Mittlestad's lack of direct involvement is not necessarily fatal. *Hildebrandt* also states that "[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [her] direction or with [her] knowledge and consent. That is, [s]he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* at 1039 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Nonetheless, the Hermanns have not alleged that Mittlestad plausibly did anything to violate their constitutional rights. They allege only that Mittlestad, or her staff, refused to accept the payment of their delinquent taxes. I take them to mean that the payment should have undone the foreclosure and allowed them to return to their home. But this is not how Wisconsin's in rem foreclosure process works. This process allows persons with an interest in land affected by tax liens a redemption period in which they may pay off the delinquent taxes and costs to the county treasurer. Wis. Stat. § 75.521(5). However, once this redemption period ends, a judgment may be entered "adjudging that the county is vested with an estate in fee simple absolute in such lands." Wis. Stat. § 75.521(13)(b). At that point, "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in such lands,

12

are forever barred and foreclosed of such right, title, interest, claim, lien or equity of redemption." *Id*. That is what happened here. The judgment entered against the Hermanns on September 16, 2013, shows that their redemption period ended on April 10, 2013. Dkt. 14-5. The refusal to accept back payment of taxes did not plausibly violate a constitutional right of the Hermanns, so it cannot support a § 1983 claim. Therefore, I will dismiss Mittlestad from this action.

I will also dismiss defendant Lange, corporation counsel for Dunn County. The Hermanns allege that Lange informed them they needed to vacate their property, that they could make a request to repurchase the property with the planning committee, and that the committee would render a decision on their request. Lange did not violate any rights of the Hermanns by accurately restating the terms of the December 2016 judgment. As for the statement about repurchasing the property, the Hermanns followed Lange's advice, made their request to repurchase, and, just as Lange represented, the county board made a decision. Unfortunately for the Hermanns, the committee did not allow them to repurchase the property. But even assuming that the Hermanns could bring a claim against the committee, its actions are not attributable to Lange. In short, Lange's accurate statements did not violate the Hermanns' rights in any way.

I take the Hermanns to be saying that defendant Smith, the sheriff, violated their rights in several ways. They say that Smith improperly served them with state court process by "leav[ing] the complaint and summons in front of the plaintiffs' door." Dkt. 1, at 7. They also allege that Smith left a notice for the Hermanns to vacate their property by December 26, 2016, which did not give them sufficient notice under Wisconsin law and that Smith did not

provide them with this information until December 16. Later, when Smith removed the Hermanns, they say he used excessive force and falsely arrested him.

Some of the Hermanns' allegations raise yet more claims that run afoul of the *Rooker-Feldman* doctrine. They believe that improper service invalidates the judgments against them, but I cannot issue a ruling that the underlying state proceedings are void. As for the terms of the order to vacate, defendant Smith did not author it—the judge did. But aside from that problem, the question of sufficient notice is one for the state courts. If the Hermanns believe that service or notice was not proper, they should have raised those issues in the state circuit court or in an appeal.

I also take the Hermanns to be alleging that defendant Smith falsely arrested Timothy. Wisconsin's electronic court records show that Timothy's criminal proceedings stemming from the February incident are not resolved; the court is waiting to see whether Timothy will comply with the terms of a deferred prosecution agreement. *See* Dunn County case no. 17-cm-89. I am required to stay their claim in this court under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). Under *Younger*, federal courts should abstain from issuing orders that would interfere with ongoing state criminal prosecutions, except in limited circumstances. *Id.* at 45. The Hermanns' false arrest claim is stayed pending resolution of state court proceedings, including appeals and collateral review proceedings.

A couple of the Hermanns' potential claims against Smith are not clearly meritless, at least at this point. I take the Hermanns to be saying that Smith intentionally or unreasonably delayed *delivering* the notice so as to cause them harm. Moreover, in their later filings, they also take issue with the manner in which Smith executed the court's order. The Hermanns say that they were removed by "unlawful" or excessive force. I take this to be an attempt by the

Hermanns to supplement their complaint to add a Fourth Amendment excessive force theory against Smith. But their new allegations are conclusory, and because they will need to re-serve their complaint upon Smith anyway, I will give them a short time to file an amended complaint including their claims against Smith. I will give them further instructions for the amended complaint at the end of the opinion.

I will also allow the Hermanns to amend their complaint and re-serve Dunn County. The Hermanns allege that Dunn County, through its planning committee, acted with bias and prejudice when it denied the Hermanns' request to repurchase their property. There is the possibility that the Hermanns could show that the planning board acted discriminatorily or abused its power to spite the Hermanns.

Although local municipalities are not typically liable under § 1983 for the actions of individual employees, it is still possible where those actions reveal a policy or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). I will therefore allow the Hermanns to amend and serve their complaint to Dunn County. But the Hermanns will have to explain how the planning committee, by choosing not to repurchase the land, violated their rights or otherwise wronged them.

F.  **Conspiracy claims**

The Hermanns' allegations pertaining to their conspiracy claims are simply too vague and unsupported to allow them to proceed. The Hermanns' position appears to be that the

various defendants' actions speak for themselves and demonstrate they "were in concert to conspire to commit this outrageous fraud to injure them." Dkt. 1, at 10. These are the exact kinds of vague allegations that the pleading rules prohibit. A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Even before *Twombly* and *Iqbal*, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

The Hermanns do, however, allege that they "have reason to believe that someone in the committee may have an interest in the plaintiffs' farm land and instead have engaged to pursue unjust enrichment." Dkt. 1, at 8. If the Hermanns have specific knowledge of a board member abusing their power to commit fraud, these allegations needed to be pleaded with particularity under Federal Rule of Civil Procedure 9(b) when they amend their complaint.

**G. Motion to strike**

The Hermanns have moved to strike the Dunn County defendants' brief opposing their motion for injunctive relief. They make three primary arguments for this. First, the "false brief should be stricken from the record because [it] does not do justice, but seek[s] to destroy the plaintiffs' rights and pursuit of justice." Dkt. 34, at 1. Second, the Hermanns argue that representations by defendants' counsel "must be stricken from the record" because she "does not have personal or firsthand knowledge of the facts." Dkt. 22, at 3. Lastly, the filings were

not redacted to remove the Hermanns' sensitive information, "especially the birth certificate, birth dates and social security number." Dkt. 34, at 1.

I will deny the motion. As stated above, I am denying the Hermanns' motion for injunctive relief, largely because of the *Rooker-Feldman* doctrine. Besides, the Hermanns' mere disagreement with defendants' positions is not reason enough to strike their filings. Defendants are permitted to bring a motion to dismiss prior to answering under Federal Rule of Civil Procedure 12, and that is exactly what they did. The argument that defense counsel does not have personal knowledge to represent the facts is also without merit—it is indeed the role of counsel to present evidence without being a direct witness to the events underlying a case. Finally, with regard to the personal information contained in exhibits, defendants contacted the clerk of court shortly after the Hermanns filed their motion and asked how to fix the problem. The clerk's office placed the offending documents under seal and directed defendants to file new, redacted versions of the documents, which defendants have done. *See* Dkt. 38 and Dkt. 39. Defendants promptly worked to correct their error, so I will not take the drastic action of striking their opposition brief.

CONCLUSION

I am granting defendants' motions to dismiss, for the most part. I am dismissing almost all of the Hermanns' claims, particularly any that are intertwined with the previous state court judgments. Most of the defendants are also dismissed. The only claims surviving are these:

- Claims that defendant Smith delayed in serving the notice to vacate, falsely arrested Timothy, and used excessive force in removing the Hermanns from the property.

- Claims that defendant Dunn County used fraud or discriminated against the Hermanns in refusing to allow them to repurchase their property.

But that does not mean the case can proceed with these claims. The Hermanns have failed to properly serve defendants Smith and Dunn County. I will give them a short time to serve these defendants under Federal Rule of Civil Procedure 4 or Wisconsin Statutes Chapter 801.

The Hermanns will also have to submit an amended complaint explaining the basis for the two sets of claims against Smith and Dunn County listed above. They should draft the amended complaint as if they were telling a story to people who know nothing about their situation. The Hermanns should identify clearly the facts that form the basis for their claims against Smith and Dunn County and set forth their allegations in separate, numbered paragraphs using short and plain statements. The complaint should not contain long recitations of legal theory, particularly "sovereign citizen" theories of exceptions to the normal rules of land ownership or civil procedure. The Hermanns are subject to the same Wisconsin and federal laws as everybody else. The important task is for the Hermanns to tell a coherent story that will allow the reader to understand exactly what Smith or Dunn County did to harm them, and why the Hermanns believe that defendants' actions were excessive, discriminatory, or fraudulent. If the amended complaint contains sovereign-citizen type allegations, rather than a plain statement of the reasons why the Hermanns are entitled to relief, I will dismiss the case entirely.

ORDER

IT IS ORDERED that:

1. Defendant State of Wisconsin's motion to dismiss, Dkt. 24, is GRANTED.

2. The Dunn County defendants' motion to dismiss, Dkt. 12, is GRANTED IN PART.

18

3. Plaintiffs Timothy Louis Hermann and Karen Elaine Hermann's motions for entry of default, Dkt. 19 and Dkt. 43, are DENIED.

4. Defendants State of Wisconsin, Megan Mittlestad, Nicholas P. Lange, Dunn County Sheriff's Office, and Planning, Resources, and Development Committee are DISMISSED.

5. Plaintiffs' false arrest claim is STAYED.

6. Plaintiffs' motion for injunctive relief, Dkt. 17, is DENIED.

7. Plaintiffs' motion to strike, Dkt. 34, is DENIED.

8. Plaintiffs may have until September 14, 2017, to submit their amended complaint as discussed in this opinion.

9. Plaintiffs may have until September 21, 2017, to serve defendants Smith and Dunn County with a summons and amended complaint.

Entered August 24, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge