IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY LOUIS HERMANN and
KAREN ELAINE HERMANN,

                           Plaintiff,                         OPINION and ORDER

    v.

                                                           17-cv-60-jdp

DUNN COUNTY and DENNIS P. SMITH,

                           Defendants.

---

        Pro se plaintiffs Timothy Louis Hermann and Karen Elaine Hermann had their home in Dunn County foreclosed upon after they failed to pay their property taxes for several years. But they would not leave, even after a county committee refused to sell them back the property and a state court issued an order authorizing Dunn County Sheriff Dennis Smith to remove them. Smith ultimately removed the Hermanns and charged them with trespassing. The Hermanns bring this lawsuit alleging that Smith violated their rights when he removed them from the property and that Dunn County violated their rights by rejecting their proposal to buy back the land by paying off the taxes and penalties they owed.

        Both sides have filed motions for summary judgment. But the Hermanns have presented no evidence suggesting that either Sheriff Smith or the committee violated their rights in any way. So I will deny the Hermanns' motion for summary judgment, grant defendants' motion, and dismiss the case.

## UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials and are undisputed unless noted otherwise.

Plaintiffs Timothy Louis Hermann and Karen Elaine Hermann owned a parcel of land and home in Otter Creek, Wisconsin. Dunn County initiated foreclosure proceedings against them because they failed to pay property taxes for several years. Judgment was entered against them in September 2013 in the circuit court for Dunn County. The Hermanns did not leave the property.

In 2016, the county initiated a new proceeding against the Hermanns to remove them from the property. The Hermanns attempted to refuse service, and the county moved for default judgment. The court held a hearing on December 6, 2016, which the Hermanns did not attend. The court granted default judgment against the Hermanns. A judgment ordering the Hermanns to vacate the property was entered on December 12. The judgment gave the Hermanns until December 26 to leave the property and authorized Dunn County "to remove the [Hermanns] and all of their personal property with the assistance of the Sheriff if they have not vacated the property." Dkt. 14-9.

Defendant Dunn County Sheriff Dennis Smith says that he received copies of the judgment from corporation counsel's office on December 14, 2016.[1] On December 16, Smith left a copy of the judgment at the front door of the property. The Hermanns also received a copy of the judgment in the mail.

---

[1] The Hermanns contend that the affidavit Smith submitted with defendants' summary judgment materials is actually an untimely response to their amended complaint. Dkt. 99, at 1. The affidavit is wholly appropriate as part of defendants' summary judgment materials.

Shortly after receiving the judgment, the Hermanns met with Nicholas Lange, Dunn County corporation counsel; the Hermanns sought to repurchase the property. To follow up, Lange sent them a letter explaining the procedure by which the county would handle the repurchase request, in light of the order to vacate the property. In the letter, Lange stated that the Hermanns still needed to vacate by December 26, but that they could leave personal property behind, and that the county Planning, Resources, and Development Committee would discuss the property at its January 10, 2017 meeting. In the letter, Lange explained that under Dunn County Ordinance 7.7.5 ("Preference to Former Owners in Tax Sales"), the committee had the authority to sell the property back to the Hermanns at a range of prices. The minimum price the committee could set for buyback was $28,500, the amount of taxes owed, along with associated interest and penalties. The maximum price could be the assessed value of the property, $70,700. Either way, there would also be a service charge that could range from a $500 statutory minimum, to a maximum of 10 percent of the assessed value, about $7,000.

On December 22, the Hermanns offered to buy the property back for the minimum number mentioned in Lange's letter—$28,500 plus a $500 service fee. Lange responded that it would be up to the committee to determine the price. The Hermanns left the property on December 26, leaving behind some personal property.

On January 10, 2017, the committee met and voted 4-1 against the Hermanns' offer to repurchase the property. The parties do not provide much detail about the hearing itself in their proposed findings. Thomas Quinn, the chair of the committee, stated that Timothy said at the hearing that if they were allowed to repurchase the land, they would seek a tax exemption for the property under 26 U.S.C. § 501(c)(3), and that Timothy would not commit to paying

3

the taxes on the property going forward. In his deposition, Timothy confirms that he would have attempted to seek a tax exemption. Dkt. 83, at 79–80. Timothy also says that the committee tried to paint them as "undesirable" by noting the times the Sheriff was sent to the property in conjunction with the foreclosure and the Hermanns' refusal to leave. *Id.* at 77–78.

Following the hearing, the Hermanns returned to the property. In January 2017, Lange sent the Hermanns a letter stating that the committee denied their request to repurchase the property, that they did not have permission to live on the property, and that they would have until February 5 to move out.

On February 6, Smith and deputies went to the property to remove the Hermanns, who were there with their three minor children. After Smith knocked on the door and identified himself, the Hermanns stayed in the house with the door locked. Timothy says that he asked to see Smith's warrant, and Smith responded that he did not need one. Smith said that they were trespassing and that he had the authority to remove them from the property. Through the window, Timothy showed Smith documents showing that the Hermanns had filed this federal lawsuit. Timothy said that the lawsuit made it a "civil matter."

Smith left the property for about 15 minutes to speak with corporation counsel about the documents Timothy had showed him. Smith then returned to the front door and told the Hermanns that the federal lawsuit did not affect his authority to remove them from the property. The Hermanns refused to leave.

Smith started breaking the door down with a sledgehammer.[2] Karen eventually unlocked and opened the door for Smith. Smith says that he "caught [Timothy] by the arm

---

[2] Defendants state that Smith "obtained a hammer and started to make entry into the Property." Dkt. 101, ¶ 42. That is too vague to be a helpful proposed finding, and the phrase "make entry" seems designed to obscure the violence entailed in breaking down the door, which

advising him he was under arrest." Dkt. 95, ¶ 28. Smith states that he "might have 'rubbed' or 'bumped' against [Timothy] in the doorway, but there was no physical exchange between [them]." Dkt. 101, ¶ 47. Smith had a deputy take Timothy into custody; there was no physical struggle when Timothy was arrested. Smith did not have Karen arrested. Karen left with the children.

Both Timothy and Karen were charged with trespassing. They agreed to a deferred prosecution agreement. Because they complied with the terms of that agreement, judgments of "dismissal/acquittal" were entered in both criminal cases in April 2018.

ANALYSIS

A. **Summary judgment standard**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, I must consider the burden of proof each party would bear on an issue at trial, and then require the party with the burden to produce evidence showing that they have proven that issue; if the party fails to provide evidence in support of a particular issue that they must prove at trial, I may enter summary judgment against that party. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

---

the parties' supporting evidence makes clear is what Smith attempted to do.

**B. Claims against Sheriff Smith**

   **1. Notice to vacate**

The Hermanns raise a series of claims against defendant Smith. They allege that Smith harmed them by waiting until December 16, 2016, to serve them with the state court's judgment stating that they had until December 26 to vacate the property. They say this violated Wisconsin law requiring at least 30 days' notice to vacate, and constituted a "civil rights violation" under 42 U.S.C. § 1983. *See* Dkt. 49, at 2.

But it is undisputed that the circuit court did not enter its "Order for Judgment" until December 12, and Smith did not receive it until December 14, so Smith's portion of the delay was two days. Defendants note that the Hermanns do not allege what specific constitutional right Smith violated by delaying, but I would not dismiss their claim for that failure; pro se plaintiffs are generally not required to plead legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).

Nonetheless, the question remains: what possible constitutional violation could these facts support? Even if Wisconsin law mandated a 30-day notice, that would raise a problem with the state court's order itself, not Smith's execution of it. And I have previously stated— but will reiterate given the Hermann's continued instance that various state court decisions were invalid—under the *Rooker-Feldman* doctrine, I cannot second-guess the validity of the state-court proceedings. *See* Dkt. 7, at 4; Dkt. 47, at 14. Moreover, a violation of a state law does not in itself create a constitutional claim. *See, e.g., Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

The only plausible constitutional theories that could apply are (1) a claim that the Hermanns were deprived of due process by the abrupt notice; or (2) a Fourth Amendment

claim that the short window to leave the premises was unreasonable. But again, the timeline itself is as much a function of the order itself as Smith's execution of it. I am aware of no authority that would support a constitutional claim under either theory for the type of brief delay alleged here against Smith. Moreover, it is undisputed that the Hermanns vacated the property before December 26, leaving some personal property behind, and then later returned. There is no evidence that they were harmed by having only 10 days instead of 12 to temporarily vacate the property. Because no reasonable jury could conclude that Smith violated the Hermanns' rights by delaying service of the judgment, I will deny the Hermanns' motion for summary judgment and grant defendants' motion for summary judgment on this claim.

2. **False arrest**

In my August 24, 2017 order partially granting the motion to dismiss filed by the various parties named as defendants in the Hermanns' original complaint, I forestalled considering the claim that Smith violated Timothy's Fourth Amendment rights by falsely arresting Timothy for trespassing, because Timothy's criminal proceedings stemming from the arrest had not yet been resolved. *See* Dkt. 47, at 14. But now it is undisputed that the Hermanns entered into a deferred prosecution agreement, that they complied with the terms of that agreement, and that judgments of "dismissed/acquitted" were entered in April 2018. So I may now consider the claim.

Timothy's false-arrest claim has no merit because defendant Smith had probable cause to believe that Timothy and Karen were committing the crime of trespassing, even though the charges were ultimately dropped. *See* Wis. Stat. § 943.14, titled "Criminal trespass to dwellings" ("Whoever intentionally enters or remains in the dwelling of another without the consent of some person lawfully upon the premises or, if no person is lawfully upon the

7

premises, without the consent of the owner of the property that includes the dwelling, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class A misdemeanor."). The Hermanns contend that the arrest was illegal because Smith did not have a warrant and because they had initiated this federal civil-rights lawsuit, but they are incorrect. "Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). A police officer has probable cause to arrest an individual if, at the time of the arrest, a reasonable person in the officer's position would believe that the individual has committed, is committing, or is about to commit an offense. *Id.* at 686. That standard is easily met here. Because of the judgments in the state-court cases, Smith knew that the Hermanns were not the lawful owners of the property anymore, and that the county did not want them living there. And the filing of this federal civil-rights lawsuit did not stay or invalidate the state-court decisions, so the lawsuit did not bar Smith from executing the judgment by removing the Hermanns. I will deny the Hermanns' motion for summary judgment on this claim and grant defendants' motion.

   3. **Excessive force**

In my order considering the motion to dismiss, I stated that some of the Hermanns' submissions indicated that they wanted to supplement their complaint with a claim that defendant Smith used excessive force when he removed them from the property. *See* Dkt. 47, at 14–15. I gave them an opportunity to file an amended complaint explaining the basis for that claim. The Hermanns' amended complaint states that Smith "used unlawful, excessive force to remove plaintiffs and seize property." Dkt. 49, at 2. This allegation is quite vague, but even assuming that these vague allegations would be enough to state a claim for relief, I will grant defendants summary judgment on that claim.

8

In cases involving force used during an arrest, courts analyze excessive force claims under the Fourth Amendment's "reasonableness" standard. *See, e.g.*, *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This type of claim requires an analysis of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).

Here, the Hermanns do not contend that Smith used any force directly against Timothy, besides grabbing his arm or possibly inadvertently brushing against him when he entered the house. The only real violence committed by Smith was his effort to break down the door with a sledgehammer after the Hermanns refused to let him in. This was not unreasonable given the circumstances: the Hermanns simply did not respect the state court's orders foreclosing on the property and ordering them to leave. Even now, their position is that Smith's use of force was unreasonable because he did not present an arrest warrant, and because "the foreclosure was disputed." Dkt. 97, at 3. I take them to mean that the foreclosure was not finalized because they had filed this federal civil-rights lawsuit. But these are really arguments about the legality of the arrest, not the excessiveness of the force used to accomplish the arrest, and I have already rejected those arguments above. Because the facts do not show anything

unusual or excessive about the force used in arresting Timothy, I will deny the Hermanns' motion for summary judgment on this claim and grant defendants' motion.

4. **Equal protection**

The Hermanns have amended their complaint to allege that defendant Smith "showed bias and prejudice by only arresting the male adult for trespassing." Dkt. 49, at 2. I take the Hermanns to be bringing a sex-discrimination claim under the Equal Protection Clause of the Fourteenth Amendment, under the theory that Smith discriminated against Timothy as a man by arresting him, instead of arresting both Timothy and Karen or arresting neither.

To prevail on an equal protection claim, a plaintiff must establish not only that the defendant's actions had a "discriminatory effect," but also that the defendant was "motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). The arrest here suggests that there was a discriminatory effect: Timothy was arrested while Karen was not. But the Hermanns do not present any evidence showing that Smith had a discriminatory purpose. A "discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part because of . . . its adverse effects upon an identifiable group." *Id.* at 907 (internal quotations omitted) (alteration in original). *See also Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 902 (7th Cir. 2012) ("Police need not arrest everyone who committed the same offense; selectivity is normal—and is proper, unless based on a forbidden classification such as race." (Easterbrook, J., concurring)).

Smith explains why he arrested Timothy but not Karen: Timothy was the one who communicated with him during the incident while Karen unlocked the door, and Smith did

not want to arrest both of them because of the caregiving problems that would have arisen for the Hermanns' three minor children. I conclude that the Hermanns' actions leading up to the arrest add little to the analysis, because both of them were in fact trespassing; Timothy's statements or Karen's unlocking of the door does not change their culpability.

But Smith's explanation about child-care needs of the Hermann family is a perfectly rational reason to arrest only one of the parents, and it is a rationale that Timothy appears to agree with on some level. At his deposition, he stated, "I do appreciate the sheriff's department showed some compassion in not arresting Karen and the kids that day and allowing them to go." Dkt. 83, at 110–11. He continues to think that it was unfair that he alone was arrested, but the Hermanns do not present any evidence suggesting that the real reason for arresting only Timothy had to do with his sex, nor do they provide any legal authority for the proposition that it is sex discrimination for a police officer to fail to arrest both parents in a situation like this. Therefore, I will deny the Hermanns' motion for summary judgment on this claim and grant defendants' motion.

C. Claims against Dunn County

The Hermanns bring claims against Dunn County, alleging that the members of the Planning, Resources, and Development Committee unlawfully conspired to reject the Hermanns' offer to buy their home back. The exact theory underlying the Hermanns' allegations is unclear. In my order addressing defendants' motion to dismiss, I considered a conspiracy-to-commit-fraud theory, but I stated that the Hermanns' allegations were too vague to state a claim. Dkt. 47, at 16. I also considered whether the committee "acted discriminatorily or abused its power to spite the Hermanns," but I stated that they would have to amend their complaint to explain how the committee violated their rights. *Id.* at 15.

In their amended complaint, The Hermanns allege:

> All the committee members, except [one], voted against the plaintiffs and fraudulently conspired to prevent legal remedy and instead pursued unjust enrichment for the county by the highest bidder. Some of the committee members who voted against the plaintiffs may have an interest in acquiring the plaintiffs' land and the committee members are not going to confess to it. Conspiracy and fraud makes it difficult to find that truth because it is hidden and not declared openly. DUNN COUNTY committee members who voted against the Hermanns were biased and prejudice[d] against the plaintiffs and may have been spiteful.

Dkt. 49, at 2. So I take them to be pursuing all the theories I mentioned above. But in their summary judgment briefing, they provide absolutely no evidence suggesting that the committee members denied them due process or acted fraudulently or discriminatorily.

In particular, they hypothesize that committee members had it out for them, or that the committee members could have used their knowledge of the proceedings to buy the property themselves or have a friend do so. But they do not support those theories with any evidence. Nor do they provide any evidence that other homeowners in similar situations were treated differently. The Court of Appeals has often called summary judgment the "'put up or shut up' moment in litigation," *see, e.g., Goodman v. National Security Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010), and the Hermanns have failed in that task. All they have to support their claims is their speculation that the committee members acted with sinister intent, and that is not enough to create a disputed issue of material fact. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (speculation not enough to defeat motion for summary judgment).

The Hermanns also contend that under the terms of the ordinance, their offer "should/shall have been approved by paying the minimum." Dkt. 97, at 5. But the ordinance does not mandate that tax-deficient homeowners be allowed to buy back the property for the

minimum; it states that the minimum price the board *may* set is the amount of past tax and penalties due. *See* Dunn Cnty. Code of Ord., § 7.7.5(2) ("no such sale shall be approved by and authorized by the Committee, unless, *as a minimum*, the former owners pay to the County all real estate taxes . . . ."). And the ordinance specifically does not give the prior owner the right to purchase the property. *See* § 7.7.5(1) ("The Committee is further authorized, but not required, to give such former owners first option to purchase said land. This section shall in no manner create any right of first refusal in any former owner."). So there is no reason to think that the committee violated the Hermanns' rights in any way by choosing not to sell it back for the bare minimum price, particularly after Timothy suggested that he was going to continue to find ways to evade paying property taxes in the future. Therefore, I will deny the Hermanns' motion for summary judgment on this claim and grant defendants' motion.

**D. Qualified immunity**

Because I am granting summary judgment to defendants on the merits of each of the Hermanns' claims, I need not address defendants' qualified immunity defense.

**E. Other motions**

**1. Motion for attorney fees**

In an April 6, 2018 order, I granted defendants' second motion to compel discovery after the Hermanns continued to refuse to provide them with documents supporting the Hermanns' claims. Dkt. 75. I also granted defendants' motion for reasonable expenses incurred in making their motion, including attorney's fees.

Defendants have responded by detailing $444.50 in attorney fees, spent over two and one-half hours of work. The Hermanns object, but on a host of grounds non-responsive to the task at hand: I already determined that they would owe reasonable costs, including attorney

fees, for their discovery misconduct. Defendants' counsel has now provided an accounting of those fees that I conclude is reasonable, so I will award them the fees they seek.

2. **Motion in limine**

Defendants have filed a motion in limine in anticipation of the mid-November trial date. Dkt. 108. But because this order results in the dismissal of the case, I will deny that motion as moot.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 85, is GRANTED.

2. Plaintiffs Timothy Louis Hermann and Karen Elaine Hermann's motion for summary judgment, Dkt. 81, is DENIED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

4. Defendants are awarded their reasonable attorney fees in the amount of $444.50.

5. Defendants' motion in limine, Dkt. 108, is DENIED as moot.

Entered October 12, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge